UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

G. THOMAS PORTEOUS, JR., United )
States District Judge for the Eastern )
District of Louisiana, )
)
)
          **Plaintiff,** )
)
v. )   Civil Case No. 09-2131 (RJL)
)
ALAN I. BARON, Special Counsel, )
Impeachment Task Force, Committee on )
the Judiciary, United States House of )
Representatives, *et al.*, )
)
)
          **Defendants.** )

## MEMORANDUM OPINION
(August 2, 2010) [#2 and #7]

G. Thomas Porteous, Jr. ("Judge Porteous"), a suspended federal district judge, seeks to enjoin three defendants—each of whom serves as counsel to the Impeachment Task Force working on behalf of the Judiciary Committee of the United States House of Representatives—from using sworn testimony provided by Judge Porteous under a grant of immunity. Judge Porteous claims that the use of that immunized testimony by the defendants to prosecute both his impeachment in the House and his subsequent trial in the Senate violates his Fifth Amendment right against self-incrimination. Not surprisingly, the defendants have moved to dismiss. Although they oppose the merits of Judge Porteous's claim on the ground that his Fifth Amendment rights are not at stake in an impeachment proceeding, they argue nevertheless that the Court cannot reach the merits because, as

Congressional aides, they are immune from suit under the Constitution's Speech or Debate Clause.

By bringing this lawsuit, Judge Porteous, in effect, invites a direct confrontation between the Judicial and Legislative Branches of our government. He calls upon our Court to exercise the extraordinary power of barring key Congressional aides from using certain evidence against him in the course of an ongoing Congressional proceeding. Fortunately, the confrontation he seeks is to no avail. Because I agree that the Speech and Debate Clause bars this suit, the defendants' Motion to Dismiss [#7] is GRANTED, and Judge Porteous's Motion for a Preliminary Injunction [#2] is DENIED.

## BACKGROUND

The seeds that gave rise to this lawsuit were sowed almost ten years ago when the Department of Justice launched a criminal investigation of Judge Porteous while he was sitting as a district judge on the United States District Court for the Eastern District of Louisiana. Although the Department concluded that there was "evidence that might warrant charging Judge Porteous with violations of criminal law relating to judicial corruption," it ultimately decided, for a number of reasons, not to seek criminal charges. (Defs.' Opp'n to Mot. for TRO and PI and Mem. in Support of Mot. to Dismiss, Ex. 3 [#5-2] at 1). Instead, the Department submitted a complaint to the Chief Judge of the United States Court of Appeals for the Fifth Circuit ("the Chief Judge"). In its complaint, the Department alleged that Judge Porteous committed numerous acts of judicial misconduct, such as soliciting and accepting cash and other things of value from litigants, attorneys, bail bondsmen, and other interested parties with matters before him, as well as making false statements on financial

2

disclosure forms and court filings in connection with his personal bankruptcy. (*Id.* at 3-21). The complaint further explained that, in light of the "evidence of pervasive misconduct committed by Judge Porteous," the Department was referring the matter to the Fifth Circuit "for possible disciplinary proceedings and, if warranted, certification of the allegations to Congress for impeachment." (*Id.* at 2).

Upon receiving the complaint, the Chief Judge authorized a Special Investigatory Committee ("the Committee") comprised of three judges from the Fifth Circuit to investigate the allegations leveled against Judge Porteous. (*Id.*, Ex. 5 [#5-3] at 2). With the assistance of its own investigator, the Committee gathered evidence and conducted a two-day adversarial hearing in which a number of witnesses testified. (*Id.* at 4-5, 12-13). Among the witnesses subpoenaed was Judge Porteous himself. (*Id.* at 12). Judge Porteous invoked his Fifth Amendment rights and refused to answer any questions put to him regarding these matters, but the Chief Judge compelled him to testify pursuant to a testimonial use Immunity Order. (*Id.*, Ex. 4 [#5-2]). The Order, which was entered by the Chief Judge in accordance with 18 U.S.C. §§ 6002-6003,[1] specifies that "no testimony or other information that he provides under this order and no information directly or indirectly derived from such testimony or other information shall be used against him in any criminal case." (*Id.* at 1). Judge Porteous did not contest the validity of the Immunity Order when it was issued, nor does he do so now.

---

[1] Section 6002 forbids an immunized witness from refusing "to comply with [an immunity] order on the basis of his privilege against self-incrimination" but provides that "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case." 18 U.S.C. § 6002.

3

Based on the evidence gleaned from its investigation, the Committee issued a report to the Judicial Council of the Fifth Circuit ("the Judicial Council") finding that Judge Porteous had committed judicial misconduct that might justify impeachment. (*Id.*, Ex. 5 [#5-3] at 65). After reviewing the report, the Judicial Council adopted the Committee's findings by a majority vote and forwarded the entire record to the Judicial Conference of the United States ("the Judicial Conference"). (*Id.*, Ex. 6 [#5-3] at 4-5). In doing so, the Judicial Council certified its conclusion that Judge Porteous engaged in conduct "which might constitute one or more grounds for impeachment under Article II of the Constitution." (*Id.*).

The Judicial Conference, in turn, reviewed the report and accompanying materials and determined that "consideration of impeachment of [Judge Porteous] may be warranted." (*Id.*, Ex. 2 [#5-2] at 2). The entire record of the proceedings in both the Judicial Council and the Judicial Conference, which included Judge Porteous's immunized testimony, was thereafter transmitted to the House for its review. (*Id.*; *Id.*, Ex. 1 [#5-2] ¶¶ 9-10). After the House officially opened its impeachment inquiry, the matter was referred to its Judiciary Committee, which appointed a bi-partisan Impeachment Task Force comprised of twelve Committee Members to spearhead the inquiry. (*Id.*, Ex. 1 [#5-2] ¶¶ 12-15). To assist with the investigation, the House Judiciary Committee hired Alan I. Baron, a highly seasoned counsel from the Seyfarth Shaw LLP law firm, as its special counsel. (*Id.* ¶ 16). Judiciary Committee staff attorneys, Mark Dubester and Harold Damelin, were also assigned to provide legal support. (*Id.* ¶ 17).

On November 13, 2009, just four days before the anticipated commencement of hearings by the Impeachment Task Force, Judge Porteous filed a single-count Complaint [#1], accompanied by a Motion for a Temporary Restraining Order and Preliminary Injunction [#2], seeking to prevent any further use of his immunized testimony. Rather than naming the Members of Congress on the Impeachment Task Force, Judge Porteous merely named the three counsel who are aiding the Task Force in its investigation: Baron, Dubester, and Damelin (collectively, "the defendants").[2] Judge Porteous's sole claim is that the "direct and indirect use of [his] immunized testimony to pursue his impeachment and removal from office violates [his] right not to be compelled to be a witness against himself under the Fifth Amendment." (Compl. [#1] ¶ 28). He seeks: (1) a declaratory judgment that the use of the immunized testimony is a violation of his constitutional rights, (2) an injunction barring the defendants from "making any use of the immunized testimony . . . in connection with its impeachment inquiry," and (3) a hearing "to determine the extent of any prior use of the immunized testimony in order to fashion an appropriate form of injunctive relief." (*Id.* at 7). The defendants promptly opposed Judge Porteous's motion and filed their own Motion to Dismiss [#7] on November 13, 2009.

I held a hearing a few days later, at the end of which I denied Judge Porteous's request for a temporary restraining order. Soon thereafter, I invited the defendants to file a

---

[2] Lest there be any doubt that Judge Porteous's ultimate objective by suing the three defendants in this case is to prevent Members of Congress from relying on his testimony, that doubt was dispelled by Judge Porteous's counsel who, when asked by this Court whether his client was seeking an order to prohibit Congress's use of the testimony either directly or indirectly, answered in the affirmative.

supplemental memorandum in support of their Motion to Dismiss. The defendants did so, and the briefing on that motion became ripe in January 2010.

On March 11, 2010, the House of Representatives adopted four Articles of Impeachment against Judge Porteous. (*See* Notice of Filing of Congressional Record [#14]). In light of that development, I ordered the parties to show cause why Judge Porteous's suit should not be dismissed as moot. (April 5, 2010 Order [#15]). Although the defendants acknowledged that there was a colorable argument that the case was moot, they did not contend that it should be decided on that basis. For his part, Judge Porteous continues to assert that his claim remains viable given defense counsel's earlier representation to this Court that the defendants "will likely serve as staff for the Managers, all of whom will be Members of the House of Representatives, of the impeachment articles at the upcoming Senate trial." (Porteous's Resp. to Court's Order to Show Cause [#16] at 2-3 (internal quotation marks omitted)).

However, because I have concluded that I lack jurisdiction by virtue of the Speech or Debate Clause, I need not determine whether the case is moot.[3] Indeed, because there is "no mandatory 'sequencing of jurisdictional issues,'" a federal court has considerable "leeway 'to choose among threshold grounds for denying audience to a case on the merits.'"

---

[3] Although it is well-established that "[m]ootness is a jurisdictional question," *North Carolina v. Rice*, 404 U.S. 244, 246 (1971), the Supreme Court has never directly addressed whether the Speech or Debate Clause is jurisdictional. Nevertheless, our Circuit Court has observed that the "Speech or Debate Clause operates as a jurisdictional bar when the actions upon which a plaintiff sought to predicate liability were 'legislative acts.'" *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006); *see also Vander Jagt v. O'Neill*, 524 F. Supp. 519, 521 (D.D.C. 1981) (concluding that "the plaintiffs have not overcome the defendants' challenge to this Court's jurisdiction by virtue of both the Speech and Debate Clause and the corollary Separation of Powers doctrine").

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 585 (1999)). Exercising that leeway here, I choose to reserve judgment on the mootness question and to dismiss the case instead for the following reasons.

## DISCUSSION

The defendants move to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Under that Rule, "the plaintiff bears the burden of establishing that the court has jurisdiction," *Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 39-40 (D.D.C. 2000), and it is well-accepted that the Court may consider evidence outside of the pleadings in deciding whether the plaintiff has met its burden, *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

One of the arguments raised in the defendants' Motion to Dismiss is that, as staff aides to Members of Congress, they are immune from suit by virtue of the Speech or Debate Clause for actions taken on behalf of their Members that are legislative in nature.[4] The

---

[4] The defendants raised two other threshold arguments that I need not address. First, they contended that the real defendant in interest is the House of Representatives—which is entitled to absolute sovereign immunity—because the obvious purpose of Judge Porteous's suit is to deprive the Judiciary Committee, in particular, and the House of Representatives, in general, from obtaining and using his immunized testimony for purposes of the impeachment inquiry and subsequent Senate trial. Second, the defendants contended that Judge Porteous's claim is not justiciable in at least two respects. They asserted first that the claim is not yet ripe because Judge Porteous has not been removed from office. Thus, any alleged harm to Judge Porteous at this point is merely speculative and does not rise to an actual case or controversy. They also asserted that Judge Porteous's claim raises a non-justiciable political question in that it challenges the use of his immunized testimony as evidence against him in the course of his impeachment and removal proceedings. The defendants argue that procedural matters pertaining to the conduct of impeachment proceedings in the House and impeachment trials in the Senate are textually committed by

defendants specifically contended that the acts challenged in this case—that is, their use of Judge Porteous's immunized testimony in conducting his impeachment and removal proceedings in Congress—are clearly legislative and thus exempt from judicial review.

Having considered the merits of this argument, I am persuaded that the Speech or Debate Clause does indeed bar judicial review of the defendants' actions in this case. Not wanting, or needing, to say any more than necessary, I will limit my opinion to the reasons that compel that conclusion.

The constitutional provision in Article I widely known as the Speech or Debate Clause provides that "for any Speech or Debate in either House" of Congress, the Senators and Representatives "shall not be questioned in any other place." U.S. Const. art. I, § 6, cl. 1. The effect of this Clause is to give Members of Congress immunity from suit for things that they say or do while "engaged in the sphere of legitimate legislative activity." *Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967) (internal quotation marks omitted). Thus, legislators who might be sued for carrying out their legislative duties are "protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Id.* at 85. When it applies, the Clause "provides protection against civil as well as criminal actions, and against actions brought by private individuals as well as those initiated by the Executive Branch." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-03 (1975).

Given its historical pedigree, which the Supreme Court has recounted in detail, *see, e.g., United States v. Johnson*, 383 U.S. 169, 177-79, the Speech or Debate Clause "has been

---

the Constitution to the sole discretion of those respective houses of Congress and are not within the province of the courts.

recognized as an important protection of the independence and integrity of the legislature," *id.* at 178. It prevents both the intimidation of legislators "by the executive and accountability before a possibly hostile judiciary." *Id.* at 181. It also serves the important function of "reinforcing the separation of powers so deliberately established by the Founders." *Id.* at 178. Indeed, the Supreme Court itself has made clear that the "purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently," *Eastland*, 421 U.S. at 502, and thereby to enable and encourage legislators to "'discharge [their] publick trust with firmness and success,'" *Powell v. McCormack*, 395 U.S. 486, 503 (1969) (quoting 1 The Works of James Wilson 421 (R. McCloskey ed. 1967)).

The Supreme Court has "[w]ithout exception . . . read the Speech or Debate Clause broadly to effectuate [those] purposes." *Eastland*, 421 U.S. at 501 (collecting cases). Thus, in *Kilbourn v. Thompson*, one of the earliest cases to interpret the Clause, the Supreme Court held that the privilege extends not only to "words spoken in debate," but to anything "generally done in a session of the House by one of its members in relation to the business before it." 103 U.S. 168, 204 (1880). Whether a Member of Congress is entitled to immunity under the Clause hinges therefore on whether the Member is "acting in the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). Where actual speech or debate is *not* involved, however, the activity "must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the

9

jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). Applying these principles, the Supreme Court has held, for instance, that conducting an investigation where information is gathered, holding hearings where the information is presented, preparing a report where the information is reproduced, and authorizing the publication and distribution of that report are all acts that fall within the legislative sphere. *Doe v. McMillan*, 412 U.S. 306, 313 (1973). Thus, if a court determines that a Member of Congress is acting within that sphere, "the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503.

Consistent with this broad application of the Clause, the Supreme Court, quite understandably, has extended its protections beyond Members of Congress to their aides as well. Given the reality and complexity of the modern legislative process, the Supreme Court found that "the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos" and that "if they are not so recognized, the central role of the Speech or Debate Clause . . . will inevitably be diminished and frustrated." *Gravel*, 408 U.S. at 616-17. For that reason, the Supreme Court held that "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be protected legislative act if performed by the Member himself." *Id.* at 618.

Applying these principles here, I have little difficulty concluding that the defendants' conduct, the constitutionality of which Judge Porteous challenges, is legislative in nature and thus entitled to absolute immunity under the Speech or Debate Clause. The activity that Judge Porteous seeks to enjoin, now that his impeachment proceeding has

jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). Applying these principles, the Supreme Court has held, for instance, that conducting an investigation where information is gathered, holding hearings where the information is presented, preparing a report where the information is reproduced, and authorizing the publication and distribution of that report are all acts that fall within the legislative sphere. *Doe v. McMillan*, 412 U.S. 306, 313 (1973). Thus, if a court determines that a Member of Congress is acting within that sphere, "the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503.

Consistent with this broad application of the Clause, the Supreme Court, quite understandably, has extended its protections beyond Members of Congress to their aides as well. Given the reality and complexity of the modern legislative process, the Supreme Court found that "the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos" and that "if they are not so recognized, the central role of the Speech or Debate Clause . . . will inevitably be diminished and frustrated." *Gravel*, 408 U.S. at 616-17. For that reason, the Supreme Court held that "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be protected legislative act if performed by the Member himself." *Id.* at 618.

Applying these principles here, I have little difficulty concluding that the defendants' conduct, the constitutionality of which Judge Porteous challenges, is legislative in nature and thus entitled to absolute immunity under the Speech or Debate Clause. The activity that Judge Porteous seeks to enjoin, now that his impeachment proceeding has

jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). Applying these principles, the Supreme Court has held, for instance, that conducting an investigation where information is gathered, holding hearings where the information is presented, preparing a report where the information is reproduced, and authorizing the publication and distribution of that report are all acts that fall within the legislative sphere. *Doe v. McMillan*, 412 U.S. 306, 313 (1973). Thus, if a court determines that a Member of Congress is acting within that sphere, "the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503.

Consistent with this broad application of the Clause, the Supreme Court, quite understandably, has extended its protections beyond Members of Congress to their aides as well. Given the reality and complexity of the modern legislative process, the Supreme Court found that "the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos" and that "if they are not so recognized, the central role of the Speech or Debate Clause . . . will inevitably be diminished and frustrated." *Gravel*, 408 U.S. at 616-17. For that reason, the Supreme Court held that "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be protected legislative act if performed by the Member himself." *Id.* at 618.

Applying these principles here, I have little difficulty concluding that the defendants' conduct, the constitutionality of which Judge Porteous challenges, is legislative in nature and thus entitled to absolute immunity under the Speech or Debate Clause. The activity that Judge Porteous seeks to enjoin, now that his impeachment proceeding has

concluded, is the defendants' direct or indirect use of his immunized testimony at his upcoming Senate impeachment trial. The trial of impeachable offenses is, of course, a matter that the Constitution places within the *sole* jurisdiction of the Senate, *see* U.S. Const. art. I, § 3, cl. 6, and the use of relevant testimony at or in preparation for that trial is, without a doubt, "an integral part of the deliberative and communicative processes by which Members participate" in the trial proceedings, *see Gravel*, 408 U.S. at 625. After all, without evidence, there can be no trial for the Senators, House Managers, and their staffs to conduct. Therefore, the consideration and use of such testimony by Members of Congress in the course of a Senate impeachment trial falls squarely within its legislative sphere.

Furthermore, because the conduct that Judge Porteous seeks to enjoin is off-limits if carried out by a Member of Congress, then it is also off-limits if carried out by the defendants, who, as counsel to the Judiciary Committee, are Congressional aides for purposes of Speech or Debate Clause immunity. Indeed, if the challenged conduct is truly outside the realm of legitimate legislative activity, as Judge Porteous contends, then there would be no reason whatsoever to name only the Congressional aides as defendants. Judge Porteous could have named the Impeachment Task Force or the Judiciary Committee as well. That he did not bespeaks the weakness of his case.

Against this tide of unfavorable case law, the only colorable argument that Judge Porteous has mustered is that the defendants' use of his immunized testimony during his impeachment and removal proceedings is not a "legitimate" legislative activity because it violates his Fifth Amendment right against self-incrimination. I disagree. Slander, of course, is no more "legitimate"—in the sense that Judge Porteous uses the term—than

improperly using immunized testimony, yet the Speech or Debate Clause undoubtedly protects legislators from suit for making slanderous remarks in floor or committee debates. *See Hutchinson v. Proxmire*, 443 U.S. 111, 130 (1979) (noting that a "speech by [Senator] Proxmire in the Senate would be wholly immune" from a suit for defamation). By equating "legitimate" with "lawful," Judge Porteous's position, were it accepted by this Court, would entirely eviscerate the protections afforded by the privilege, and in so doing, it would undermine one of the core purposes of the Speech or Debate Clause, which is "to insure that legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions." *Powell*, 395 U.S. at 505. It makes little sense in light of that purpose to predicate a legislator's entitlement to legislative immunity on a finding that the legislator did *not* act unlawfully. Indeed, it would defeat the entire point of the Clause to subject a legislator to the burdens of discovery and a potential trial for the purpose of determining whether the legislator acted lawfully and thus, in Judge Porteous's view, "legitimately," even when the nature of the legislator's conduct is well within the normal bounds of legislative activity.

In sum, the proper focus of this Court's inquiry under the Speech or Debate Clause is not, as Judge Porteous would have it, on what the defendants did in particular and whether it was unlawful. The focus is on the nature of the defendants' conduct more generally. So long as the type of conduct he seeks to enjoin falls legitimately within the scope of legislative activity, it matters not whether the specific conduct is unlawful.[5] As the Supreme

---

[5] *Compare Eastland*, 421 U.S. at 492-511 (holding that the issuance of a committee subpoena was a legitimate legislative activity entitled to immunity under the Speech or Debate Clause, notwithstanding the plaintiffs' allegation that the subpoena violated their

12

Court teaches, "[c]ongressmen and their aides are immune from liability for their actions within the 'legislative sphere,' *even though* their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statues." *Doe*, 412 U.S. at 312-13 (internal citation omitted) (emphasis added). Therefore, because the use of testimony to prepare for and conduct Congressional impeachment and removal proceedings is conduct of the type that clearly falls within the legislative sphere, the Speech or Debate Clause prevents this Court from questioning, let alone enjoining, the defendants about their use of Judge Porteous's immunized testimony, whether or not such use actually runs afoul of the Fifth Amendment.

## CONCLUSION

The Speech or Debate Clause protects the independence and autonomy of the Legislative Branch from judicial intrusion. In that sense, the Clause is critical to ensuring the Constitution's division of powers. Judicial restraint and comity dictate that this Court refrain from any interference with the ongoing proceedings in the Senate. Indeed, our Circuit Court admonished members of the District Court in a similar case to be "at least as

---

First Amendment rights); *Doe*, 412 U.S. at 309-18 (holding that the plaintiffs' constitutional and common-law privacy claims were barred by the Speech or Debate Clause insofar as they sought relief from legislators and their staff for, among other things, introducing confidential material at committee hearings); *with Powell*, 395 U.S. at 494, 501-06 (refusing to extend Speech or Debate Clause protection to the Clerk of the House for refusing to perform the duties due to a Representative, to the Sergeant at Arms for refusing to pay the plaintiff his salary, and to the Doorkeeper for refusing to admit the plaintiff into the House chamber, all of which are conduct that does not constitute legislative action); *Dombrowski*, 387 U.S. at 84-85 (holding that legislative immunity did not extend to committee counsel who was charged with conspiring with state officials to carry out an illegal seizure of records); *Kilbourn*, 103 U.S. at 200-05 (holding that the person who carried out an illegal arrest was not entitled to legislative immunity even though the legislators who authorized the arrest were).

hesitant to interrupt [impeachment trial] proceedings in progress as [they] would be to interrupt proceedings underway in a state or coordinate federal court." *Hastings v. U.S. Senate*, 887 F.2d 332, 1989 WL 122685, at *1 (D.C. Cir. Oct. 18, 1989) ("*Hastings I*") (unpublished). After all, it is not as if Judge Porteous has no forum in which to voice his constitutional objection to the use of his immunized testimony. He may do so in the Senate, which, as the impeachment court, may well grant the relief he seeks. His attempt here to circumvent the Senate altogether by bringing his constitutional challenge in this tribunal *before* the Senate has even reached a final decision is not only premature, but an affront to our constitutional order. Given the immunity afforded to the defendants by the Speech or Debate Clause, together with the already strong constitutional interests counseling against judicial interference with ongoing impeachment trial proceedings in the Senate, there is no sound basis for this Court to exercise its jurisdiction at this juncture. Accordingly, the defendants' Motion to Dismiss [#7] is GRANTED, and Judge Porteous's Motion for a Preliminary Injunction [#2] is DENIED. An Order consistent with this Memorandum Opinion is attached.

*/s/ Richard J. Leon*
RICHARD J. LEON
United States District Judge